# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## MIAMI DIVISION

| | | |
|---|---|---|
| HAIDY ELSHATER | ) | |
| | ) | |
| Plaintiff | ) | CASE NO.: 1:21-cv-24427 |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| CHARLOTTE BURROWS, CHAIR | ) | **WITH JURY TRIAL DEMAND** |
| OF THE EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION | ) | |
| | ) | |
| Defendant(s) | | |
| _____/ | | |

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful discrimination in federal employment practices on the basis of national origin (Mexican), religion (Muslim), and reprisal (opposition and participation) and retaliation, and to provide appropriate relief to Plaintiff HAIDY ELSHATER who was adversely affected by such practices.

As alleged with greater particularity below in paragraphs 21 through 74 and 75 through 98 above, Plaintiff HAIDY ELSHATER ("**PLAINTIFF**" and/or "**Plaintiff ELSHATER**") alleges that she was subjected to ongoing disparate treatment and harassment national origin (Mexican), religion (Muslim), and reprisal (opposition and participation) by the Chair of the Equal Employment Opportunity Commission CHARLOTTE BURROWS (**"Defendant"** or "**Defendant BURROWS**) when Defendant was aware of and permitted Miami District Office (MIDO) management to discriminate against Plaintiff, on discrimination and harassment based on national origin (Mexican), religion (Muslim), reprisal (opposition and participation), and disability

(mental) . Additionally, Defendants retaliated against Plaintiff for opposing such practices by allowing by refusing to investigate the claims, withholding promotions, changing her schedule, refusing/failing to provide reasonable religious accommodations and frustrating her workload and taking actions that threatened her employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII") and section 102 of the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. Section 791, the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.

2. Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, pursuant to 42 U.S.C., 2000e-5(f)(3).  In addition, venue is proper herein as the primary actions complained of either occurred within or were directed within the geographical boundaries of the Miami, Florida (Southern District of Florida); and pursuant to 28 U.S.C. Section 1391(e).

## PARTIES

3. Plaintiff ELSHATER is a Mexican female currently domiciled in Miami, Florida, and who for all times relevant herein has been employed on a full-time basis as an employee of the United States Equal Employment Opportunity Commission ("EEOC"). At those times relevant to the subject of this lawsuit, Plaintiff ELSHATER was assigned for her professional work to the Miami District Office, a field office within the Miami District of the EEOC located at 100 SE 2nd Street, Suite 1500, Miami, FL 33131 ("MIDO").

4. At all relevant times, the EEOC has continuously been a Federal Agency doing business in the State of Florida and within the City of Miami and has continuously had at least 15 employees. At those times relevant to the subject of this lawsuit, Plaintiff ELSHATER was employed by and assigned for his professional work MIDO.

5. Defendant BURROWS is the Chair of the EEOC and, as such, is the Defendant, only in her official capacity as the Chair of the EEOC. Defendant BURROWS is the senior Executive Branch federal official responsible for the actions of the United States Equal Employment Opportunity Commission, which is the principal subject of the allegations made herein, and which is located at 131 M St. NE, 6th Floor, Washington, DC 20507.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES/CONDITIONS PRECEDENT**

6. From approximately **April 2016** to present, Plaintiff ELSHATER suffered from continuing violations, indiscrete acts, and discrimination by Defendants as outlined in more detail herein.

7. Plaintiff ELSHATER advised MIDO management (the EEOC) of complaints of disparate treatment and harassment (non sexual hostile work environment) on the bases of her national origin (Mexican), religion (Muslim), and reprisal (opposition and participation) since approximately 2016.

8. On **October 15, 2018**, Plaintiff contacted the Office of Equal Opportunity (OEO) to initiate EEO Counseling.

9. On **November 14, 2018**, Plaintiff ELSHATER was issued the Notice of Right to File a Formal Complaint.

10. On **November 28, 2018**, Plaintiff timely filed a formal complaint,

11. More than thirty (30) days prior to the institution of this lawsuit, Plaintiff ELSHATER filed a charge with the Commission alleging violations of Title VII by Defendant

BURROWS.

12. Plaintiff submitted charges of discrimination to Defendant BURROWS within 180 days of the discrimination against them.

13. Prior to the institution of this lawsuit, Defendant BURROWS and/or representatives failed/refused to attempt to eliminate the unlawful employment practices alleged below and to effect Defendant's voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).

14. Thus, all conditions precedent to bringing this action have been performed or occurred.

## STATEMENT OF FACTS

15. On **May 17, 2015,** Plaintiff was hired as an Equal Opportunity (EO) Bilingual Investigator (Spanish) (GS-7) in the Agency's Cleveland Field Office (CLEVFO).

16. On or about **March 27, 2016**, Plaintiff was transferred to the Agency's Miami District Office (MIDO).

17. From **March 2016** to January or **February 2017**, MlDO Enforcement Supervisor Katherine Gonzalez ("Ms. Gonzalez") was Plaintiff's first-line supervisor.

18. From **January or February 2017 to September 9, 2019**, MIDO Enforcement Supervisor Rosemary Caddle ("Ms. Caddle") was Plaintiff's first-line supervisor.

19. From **March 2016** to **September 9, 2019**, MIDO Enforcement Manager Nitza Wright ("Ms. Wright") was Plaintiff's second-line supervisor.

20. From **September 9, 2019**, to **November 29, 2019**, Plaintiff reported directly to MIDO District Director Michael Farrell ("Director Farrell").

A. <u>**Harassment**</u>

21. Plaintiff ELSHATER was subjected to disparate treatment and harassment (non sexual hostile work environment) on the bases of her national origin (Mexican), religion (Muslim), and reprisal (opposition and participation) in the form of indiscrete acts from 2016 through and including 2020.

22. Plaintiff is a practicing Muslim. As part of the observance of her sincerely held religious beliefs, Complainant prays five (5) times a day, does not drink alcohol, and does not usually attend social gatherings with people outside of her family

23. From **April 2016** to **February 2017**, KATHERINE GONZALEZ ("Supervisor Gonzalez") assigned Plaintiff complex, aged cases, which should have been assigned to a more senior investigator, because Plaintiff declined Supervisor Gonzalez's invitations to socialize outside of the workplace.

24. On or about **April 22, 2016**, Plaintiff first denied reasonable accommodation and subsequently provided an ineffective reasonable accommodation when MIDO management instructed Plaintiff to pray in the lactation room and not to pray in her private office.

25. On or about **April 27, 2016**, Plaintiff filed internal complaints of discrimination with MIDO management when Katherine Gonzalez initially denied her request to pray in her office as a religious accommodation.

26. Beginning on or about **February 9, 2017,** and continuing, Rosemary Caddle, Nitza and Wright publicly and privately ridiculed and humiliated Plaintiff about her verbal and written English language skills.

27. On or about **October 20, 2017**, Plaintiff complained of religious discrimination to OCHCO, Employee and Labor Relations Division (ELRD) Director Yolanda Owens while she

visited MIDO to conduct an onsite OCHCO investigation and climate assessment.

28. From **March 2016 to February 2017** KATHERINE GONZALEZ directed Plaintiff not to pray in her office and prohibited Plaintiff from closing her door during the times her religion required her to pray;

29. From **March 2016 to February 2017**, ROSEMARY CADDLE questioned Plaintiff about her religious accommodation and demanded copies of Plaintiff's prayers to review

30. From **March 2016 to September 2019,** ROSEMARY CADDLE repeatedly attempted to discourage Plaintiff from participating in the EEO process.

31. From **March 2016 to November 29, 2019,** Katherine Gonzalez, Rosemary Caddle, and Nitza Wright treated Plaintiff in a discriminatory and disrespectful manner and made demeaning and discriminatory statements regarding Plaintiff's English language skills.

32. Rosemary Caddle repeatedly attempted to discourage Plaintiff from participating in the EEO process.

33. From **March 2018** through **September 2018**, Nitza Wright repeatedly proselytized to Plaintiff and made comments related to Plaintiff's religion.

34. Nitza Wright's religious discussions and proselytizing her religious belief, were unsolicited and made Plaintiff feel very uncomfortable.

35. Specifically, Plaintiff gave car rides just to Ms. Wright beginning in **November 2017** and Ms. Caddle beginning in **February 2017**.

36. Plaintiff felt obligated to give Nitza Wright and Rosemary Caddle rides to work when they asked because they were her supervisors.

37. Plaintiff never offered car rides to either Nitza Wright or Rosemary Caddle.

38. Plaintiff attempted to disengage Nitza Wright and Rosemary Caddle from

discussing religion to no avail.

39. On numerous occasions, Nitza Wright told Plaintiff to convert to Christianity.

40. Knowing that Plaintiff's parents were Christians, Nitza Wright told Plaintiff that she should follow the religion of her parents.

41. Furthermore, Nitza Wright told Plaintiff that she would "go to hell if she did not accept Jesus Christ as her lord and savior."

42. On or about **April 20, 2018**, Nitza Wright preached to Plaintiff about her religion for hours and made Plaintiff speak over the phone with Ms. Wright's church sister about Plaintiff's religion for over two (2) hours.

43. On or about **May 28, 2018**, Plaintiff spoke to union representatives Rachel Shonfield and Max Feige regarding her allegations of harassment by Rosemary Caddle, but was told that even if she complained, Agency Headquarters would take no action because they always believe the supervisor.

44. On or about **May 28, 2018**, after speaking with Ms. Shonfield, Rosemary Caddle called Plaintiff into her office and told Plaintiff that she and Ms. Shonfield were best friends. Plaintiff felt horrified and returned to her office to cry.

45. On or about **May 28, 2018**, Rosemary Caddle intimated that because of her friendship with a Union Representative and because Agency Headquarters always believes Agency supervisors, filing a harassment complaint would be futile.

46. Plaintiff was unaware that Nitza Wright and Rosemary Caddle's attempts to convert her to Christianity were based on an animus towards Muslims until **November 2018**, when a coworker (MIDO Investigator Juan Nieves) informed Plaintiff that Nitza Wright and Rosemary Caddle stated that, Plaintiff "doesn't belong in the office because she is Muslim."

47. Nitza Wright's and Rosemary Caddle's repeated attempts to convert Plaintiff to Christianity, as well as discussions about religion and proselytizing were unwelcome and made Plaintiff feel very uncomfortable, thus making it difficult for Plaintiff to work and/or concentrate, and making Plaintiff physically sick.

48. On or about **October 2, 2018**, instead of having a pre-scheduled meeting with the MIDO District Director, Plaintiff met with Rosemary Caddle, who advised Plaintiff that she was being forced to promote Plaintiff and that she "should have gotten rid of Plaintiff," and that all the other supervisors also disliked Plaintiff.

49. On **October 2, 2018**, during a meeting with Plaintiff and a Union Representative, Rosemary Caddle angrily yelled at Plaintiff causing Plaintiff to cry uncontrollably and leave work seeking medical treatment for anxiety.

50. From **October 3, 2018** through **October 20, 2018**, Plaintiff missed work due to anxiety resulting from Ms. Caddle's actions as detailed in paragraphs 38-39.

51. On or about **October 15, 2018**, Plaintiff initiated EEO counseling.

52. On or about **October 25, 2018**, Plaintiff requested to Rosemary Caddle to that she be able to telework, as a reasonable accommodation.

53. Again, on or about **October 29, 2018**, Plaintiff requested to Rosemary Caddle to that she be able to telework, as a reasonable accommodation.

54. On or about **November 6, 2018**, Plaintiff was subjected to discrimination on the basis of disability (mental) when she was denied a reasonable accommodation (telework and reassignment to new supervisors) by Agency. Specifically, Plaintiff was suffered from Major Depressive Disorder, Post Traumatic Stress Disorder, and Severe Anxiety. Defendant was aware of Plaintiff's disabilities.

55. On or about **November 12, 2018,** Plaintiff overheard Nitza Wright telling MIDO Investigator Mario Hernandez that he looked like a "Middle Eastern terrorist" because he had grown a beard.

56. On or about **November 13, 2018**, Plaintiff was informed that Rosemary Caddle and Nitza Wright had been making discriminatory and derogatory comments generally about Muslims and specifically about Plaintiff.

57. On or about **November 30, 2018**, Plaintiff again requested a reasonable accommodation on the basis of disability (mental).

58. On or about **December 4, 2018**, Rosemary Caddle and District Resource Manager Michael Bethea referred Plaintiff to the Disability Program Manager Cumber ("DPM Cumber") to address her requests for reasonable accommodations.

59. On or about **December 19, 2018,** DPM Cumber denied Plaintiff's request for reasonable accommodations.

60. On or about **March 5, 2019**, Plaintiff emailed District Resource Manager Michael Bethea that Rosemary Caddle and Nitza Wright were continuing to harass her, which was causing Plaintiff immense anxiety and creating a hostile work environment.

61. On or about **April 23, 2019**, emailed Director Farrell requesting to be removed from Rosemary Caddle's supervision, after Ms. Caddle humiliated Plaintiff in a conference call that included Nitza Wright and Director Farrell. Specifically, during the call Ms. Caddle smiled, in a taunting manner, at Plaintiff, as Plaintiff communicated her disabilities were directly related to Ms. Caddle's harassment that resulted in Plaintiff's hospitalization. Director Farrell merely responded that Plaintiff had to be able to perform, with or without an reasonable accommodations.

62. On or about May 3, 2019, Rosemary Caddle, with Nitza Wright 's knowledge and

approval, verbally harassed Plaintiff by throwing a Performance Improvement Plan ("PIP") on Plaintiff's keyboard causing Plaintiff to have an anxiety attack, including experiencing difficulty breathing and chest pains and crying uncontrollable, causing Plaintiff to leave work and seek medical treatment. As a result, Plaintiff was hospitalized for an entire week, beginning on or about May 8, 2019.

63. On or about **September 11, 2019**, Plaintiff requested leave without pay as a reasonable accommodation to enter a ninety (90) day psychosocial residential treatment program.

64. On or about **November 27, 2019**, Plaintiff communicated to District Resource Manager Bethea that she had no option but to resign from her employment, effective November 29, 2019, because the working conditions had become intolerable.

65. Furthermore, Plaintiff was subjected to harassment and discrimination based on (reprisal) following the termination of her employment because the working conditions were intolerable. Specifically, Plaintiff was denied unemployment benefits and on or about **April 2, 2020**, Plaintiff was further subjected to discrimination based on (reprisal) following the separation her employment when Plaintiff was notified by her health insurance carrier that she owed the company $3,500 because the Agency never notified her health insurance carrier that she had separated from the Agency.

66. At all times herein, Plaintiff feared retaliation because of Nitza Wright's, Rosemary Caddle, Katherine Gonzalez because they were in positions of authority and because the agency in the MIDO management had a reputation for retaliating against its employees.

67. At all times herein, MIDO Management and employees were aware of Plaintiff's national origin (Mexican), disabilities (mental) and religion (Muslim), which was known by Defendant.

68. At all times herein, Plaintiff suffered from Major Depressive Disorder, Post Traumatic Stress Disorder, and Severe Anxiety. Defendant was aware of Plaintiff's disabilities.

69. At all times herein, Plaintiff subjectively perceived Ms. Caddle's, Ms Wright's and Ms. Gonzalez's offensive conduct as abusive and discriminatory.

70. At all times herein, Plaintiff subjectively perceived MIDO management's failure to take appropriate action as abusive and discriminatory.

71. At all times herein, Defendant's failure to provide Plaintiff with reasonable accommodations, related to religious practices and disabilities, was abusive and discriminatory.

72. Ms. Caddle's, Ms. Gonzalez's and Ms. Wright's discriminatory conduct and harassment negatively affected Plaintiff employment as she began to experience more anxiety, stress, and depression which resulted in Plaintiff not being able to concentrate at work, missed days of work, and decreased productivity at work.

73. Ms. Caddle's, Ms. Gozalez's and Ms. Wright's discriminatory conduct and harassment was severe and pervasive enough to create an objectively hostile or abusive work environment for Plaintiff at MIDO, as Plaintiff was continuously and repeatedly subjected to Ms. Caddle's, Ms. Gonzalez's, and Ms. Wright's disparate treatment based on Plaintiff's Plaintiff's religion, disability, engagement in protected activity, and national origin.

74. Additionally, MIDO management's discriminatory conduct and harassment was severe and pervasive enough to create an objectively hostile or abusive work environment for Plaintiff at MIDO, as Plaintiff was continuously and repeatedly subjected to MIDO management's disparate treatment based on Plaintiff's religion, disability, engagement in protected activity, and national origin. As a result, Plaintiff was negatively affected as she began to experience more anxiety, stress, and depression which resulted in Plaintiff not being able to concentrate at work,

missed days of work, and decreased productivity at work.

**B. Retaliation**

75. Beginning on or about April **26, 2016**, Plaintiff made internal complaints of discrimination to MIDO management she was being subjected to different terms and conditions of employment and harassment based on her religion.

76. On or about **April 26, 2016**, Plaintiff filed internal complaints of discrimination with MIDO management when Katherine Gonzalez initially denied her request to pray in her office as a religious accommodation.

77. On or about **February 28, 2017**, Plaintiff filed internal complaints of discrimination to MIDO management.

78. From **February 2017** and continuing, Rosemary Caddle assigned Plaintiff complex, aged cases in retaliation for participating in protected activity

79. Plaintiff was repeatedly denied her grade promotion to GS-11:

80. In **May 2017**, while under the supervision of Rosemary Caddle, Plaintiff's grade promotion to GS-11 was denied.

81. On or about **October 20, 2017**, Plaintiff complained of discrimination to Yolanda Owens.

82. At all times herein, MIDO management was made aware of all of Plaintiff's complaints.

83. In **November 2018**, Plaintiff learned it was Katherine Gonzalez who denied her the grade promotion in **February 2017**, and that a justification letter had been put in Plaintiff's personnel file without her knowledge.

84. On or about **October 2, 2018**, Rosemary Caddle denied Plaintiff's grade

Case 1:21-cv-24427-XXXX   Document 1   Entered on FLSD Docket 12/22/2021   Page 13 of 19

Page **13** of **19**

promotion to GS 11.

85. On or about October 2, 2018, Rosemary Caddle delayed the processing of Plaintiff's Workers' Compensation claim.

86. On or about **October 2, 2018**, Plaintiff requested from MIDO management to be removed from Ms. Caddle's unit as a reasonable accommodation.

87. On or about **October 2, 2018**, Rosemary Caddle came into Plaintiff's office and threatened Plaintiff about scheduling a meeting with Director Farrell regarding the denial of Plaintiff's promotion to GS-11. Specifically, Ms. Caddle told Plaintiff that she "should have gotten rid of' her." and angrily yelled at Plaintiff causing Plaintiff to cry uncontrollably and leave work seeking medical treatment for anxiety. As a result of Ms. Caddle's actions, Plaintiff was forced to miss work from **October 3, 2018,** through **October 20, 2018**.

88. Rosemary Caddle and Enforcement Manager have over scrutinized Plaintiff's work in retaliation for her protected EEO activity. Specifically, Plaintiff engagement in protected EEO activity, included, but was not limited to:

   a. On **October 15, 2018**, Plaintiff contacted the Office of Equal Opportunity (OEO) to initiate EEO Counseling, alleging that the Agency subjected her to discrimination and harassment based on national origin (Mexican), religion (Muslim), reprisal (opposition and participation), and disability (mental).

   b. On **October 29, 2018**, Plaintiff was interviewed by an OEO Counselor.

   c. On **November 28, 2018**, Plaintiff timely filed a formal complaint.

   d. On **December 17, 2019**, Plaintiff submitted additional claims of discrimination following her resignation.

89. On or about **November 6, 2018**, Plaintiff formally made a request for a

AZOY SOCORRO, LLP
2020 Ponce de Leon Boulevard, Suite 1008 I Coral Gables, FL 33134 I T: (305) 340-7542 I F: (305) 418-7438 I W: www.azoysocorro.com

Case 1:21-cv-24427-XXXX   Document 1   Entered on FLSD Docket 12/22/2021   Page 14 of 19

Page **14** of **19**

reasonable accommodation to DPM Cumber.

90. On or about **August 28, 2019**, in retaliation and in an effort to intimidate Plaintiff, MIDO Director Farrell informed Plaintiff that:

  a. he was going to report her to the Office of Legal Counsel for not seeking prior autho1ization to engage in outside employment related to her work in her masters' degree program and participation in an internship as part of the curriculum;

  b. the Office of the Chief Human Capital Officer (OCHCO) had concerns that Plaintiff submitted incomplete or inaccurate information with respect to her FMLA request; and

  c. he received a report that Plaintiff informed a newly hired Muslim employee that she had been hired because of her religion, that behavior would not be tolerated, and that he would be providing this information to OCHCO

91. On **November 29, 2019**, Plaintiff was constructively discharged from her employment as Plaintiff had no option to resign considering that the working conditions had become intolerable.

92. At all times herein, Plaintiff suffered from Major Depressive Disorder, Post Traumatic Stress Disorder, and Severe Anxiety. Defendant was aware

93. In addition, as a result of the retaliation, Plaintiff suffered from loss of credibility and a damaged professional reputation.

94. The aforesaid adverse employment actions; misconduct, acts and omissions to the Plaintiff's detriment; were all taken (or failed to be taken) by administrators, managing, and supervisory personnel at MIDO in retaliation for the protected EEO activity of the Plaintiff.

AZOY SOCORRO, LLP
2020 Ponce de Leon Boulevard, Suite 1008 I Coral Gables, FL 33134 I T: (305) 340-7542 I F: (305) 418-7438 I W: www.azoysocorro.com

including, which in turn negatively affected Plaintiff employment as he began to experience more frequent anxiety, stress, and depression resulting in Plaintiff not being able to concentrate at work, missed days of work, and decreased productivity at work.

95. As a result of the forgoing, Plaintiff's was negatively affected as he constantly had to worry about being retaliated against for engaging in any sort of protected activity. Plaintiff's constant worries led to a lack of focus on work matters, thus decreasing his productivity.

96. As a direct and proximate result of Plaintiff's engagement in protected activity, Plaintiff has suffered the adverse employment actions set forth above. These actions would deter a reasonable employee from engaging in protected activity

97. The Defendant, through acceptance of such conduct, fostered an attitude among administrators, managers and supervisors at MIDO- that retaliation against employees, in order to discourage protected activity is an acceptable employment practice by administrators, managers and supervisors at MIDO.

98. The retaliation affected the terms and conditions of Plaintiff ELSHATER's employment as outlined above in specific detail.

## CLAIMS FOR RELIEF

### COUNT I
### (Disparate Treatment/Harassment based on national origin religion and reprisal)
### (Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)

99. Plaintiff ELSHATER incorporates by reference the allegations paragraphs 21 through 74.

100. On a continuing basis since at least 2016, Defendant wasaware that Ms. Wright, Ms. Gonazalez and Ms. Caddle, subjected Plaintiff ELSHATER to disparate treatment and harassment (non-sexual hostile work environment) on the bases of her national origin (Mexican),

religion (Muslim), and reprisal (opposition and participation) in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e e(j). Specifically, Defendant was aware that Plaintiff ELSHATER was disparate treatment and harassment as outlined in paragraphs 21 through 74, above.

101. The harassment and unlawful employment practices suffered by Plaintiff ELSHATER was based on her national origin (Mexican), religion (Muslim), and reprisal (opposition and participation).

102. The effect of the harassment and unlawful employment practices complained of in paragraphs 21 through 74 above were sufficiently severe and pervasive and had the purpose and effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile and/or offensive work environment.

103. The effect of the harassment and unlawful employment practices complained of in paragraphs 21 through 74 above has been to deprive Plaintiff since at least 2016 of equal employment opportunities and otherwise adversely impact her status as an employee because of their national origin (Mexican), religion (Muslim), and participation in protected activity.

104. The unlawful employment practices complained of in 21 through 74 above were intentional and caused Plaintiff ELSHATER to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or personal stress and mental and physical pain and suffering

105. The unlawful employment practices complained of in 21 through 74 above were intentional and caused Plaintiff ELSHATER to lose earnings, compensation, medical benefits, including health insurance benefits, and income including, but not limited to, back-pay.

106. The unlawful employment practices complained of in 21 through 74 above were engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff

ELSHATER.

107. The unlawful employment practices complained of in 21 through 74 above form the basis for imputing liability on Defendants as Defendants were aware of the harassment and unlawful employment practices since 2016 and failed to take any prompt and/or reasonable action to end the harassment.

108. All conditions precedent to bringing this action have been performed or occurred as outlined in paragraphs 6 through 14 above

## CLAIMS FOR RELIEF

### COUNT II
### (Retaliation/Retaliatory Harassment) (Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)

109. Plaintiff ELSHATER incorporates by reference the allegations in paragraphs 75 through 98.

110. Plaintiff ELSHATER, at all times material hereto, undertook protected conduct when she complained to MIDO Management, Ms. Owens, OEO, and Defendant about the disparate treatment, harassment, and unlawful employment practices as outlined in paragraphs 75 through 98.

111. As a direct and proximate result of the protected EEO activity, Plaintiff suffered material adverse employment actions, as a result of participating in protected EEO activity, as outlined in paragraphs 75 through 98, above. These actions would deter a reasonable employee from engaging in EEO activity.

112. A causal nexus exists between Plaintiff ELSHATER's undertaking of the protected conducted complained of in paragraphs 75 through 98, above and the material adverse action taken by Defendants against her.

113. All conditions precedent to bringing this action have been performed or occurred as outlined in paragraphs 6 through 14 above

## **PRAYER FOR RELIEF**

Wherefore, the Plaintiff ELSHATER respectfully requests that this Court:

A. Grant all injunctive relief necessary to bring Defendants into compliance with the aforementioned laws;

B. Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff to date by reason of Defendants' unlawful actions, in amounts to be determined at trial;

C. Order Defendant full restitution or compensation for loss of personal and sick leave, medical benefits, and for all retirement benefits;

D. Order Defendants to make whole Plaintiff by providing full restitution and compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 21 through 98above, in amounts to be determined at trial

E. Order Defendants to pay compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be determined at trial;

F. Order Defendant to pay exemplary and punitive damages for its malicious and reckless conduct described in 21 through 98 above, in amounts to be determined at trial;

G. Order Defendants to pay Plaintiff for any benefits including, but not limited to, sick leave, annual leave, or leave without pay taken as a result of the alleged discriminatory or retaliatory harassment.

H. Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

   I.  Award Plaintiff her costs of this action, including reasonable attorneys' fees under 42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre-judgment interest, and

   J.  Grant such further relief as the Court deems necessary and proper in the public's interest.

## DEMAND FOR JURY TRIAL

 Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

Dated: December 22, 2021

 */s/ David M. Fraguio*
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
**DAVID M. FRAGUIO, ESQ.**
Florida Bar No.: 1016475
AZOY SOCORRO, LLP
*Attorneys for Plaintiff*
2020 Ponce de Leon Blvd.,
Suite 1008
Coral Gables, Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email: jose@azoysocorro.com;
 david@azoysocorro.com